Lawrence A. Organ (SBN 175503)
Julianne K. Stanford (SBN 290001)
Kira Brekke (SBN 339757)
**CALIFORNIA CIVIL RIGHTS LAW GROUP**
332 San Anselmo Avenue
San Anselmo, CA 94960
Tel. (415) 453-4740
Fax (415) 785-7352
Email: larry@civilrightsca.com
        julianne@civilrightsca.com
        kira@civilrightsca.com

Attorneys for Plaintiff
TANYA FLENORY

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TANYA FLENORY,<br><br>            Plaintiff,<br><br>   vs.<br><br>MACY'S INC., a corporation; and MACY'S RETAIL HOLDINGS, LLC, a limited liability corporation<br><br>            Defendants. | Case No.:<br><br>COMPLAINT FOR DAMAGES<br><br>1. Race Discrimination in Violation of FEHA;<br>2. Retaliation for Complaining of Discrimination in Violation of FEHA;<br>3. Failure to Prevent Discrimination and Retaliation in Violation of FEHA;<br>4. Constructive Discharge in Violation of Public Policy<br><br>JURY TRIAL DEMANDED |

## NATURE OF THIS ACTION

1. This is an action by Plaintiff Tanya Flenory ("Flenory" or "Plaintiff") against Macy's Inc. and Macy's Retail Holding, LLC (jointly "Macy's" or "Defendants"). Plaintiff brings this action against Defendants for violations of California's Fair Employment and Housing Act ("FEHA"), California Government Code § 12940 *et seq.* and related tort claim for constructive discharge.

2. Over her seven-year tenure at Defendant Macy's, Plaintiff Flenory maintained a stellar

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

reputation and consistently received commendations for her high sales. Despite this, she was denied promotional opportunities over less-qualified non-Black employees. She complained to upper management about their discriminatory promotion practices and instead of conducting a prompt and thorough investigation, Defendant Macy's failed to prevent the discriminatory conduct and retaliated against her by not selecting her for the Cosmetics Department Manager position.

3. As a result, Plaintiff Flenory suffered emotional distress.

4. On March 5, 2021, Defendant Macy's constructively terminated Plaintiff Flenory's employment due to their failure to prevent the discrimination causing her to develop depression and anxiety.

## JURISDICTION AND VENUE

5. Jurisdiction and venue are proper in this court pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1391(b)(2). This Court has jurisdiction in that the amount in controversy exceeds the jurisdictional limits of this Court according to proof at trial.

6. This court also has supplemental jurisdiction over Plaintiff's related state law claims under 28 U.S.C. § 1367. Plaintiff's state law claims arise from the same common nucleus of operative facts as the underlying federal claims. Resolving all state and federal claims in a single action serves the interests of judicial economy, convenience, and fairness to all parties.

7. This court has personal jurisdiction over Defendant Macy's Retail Holdings, LLC, which has its corporate offices and principal place of business location in Ohio.

8. This court has personal jurisdiction over Defendant Macy's Inc, which has its corporate offices and principal place of business located in New York.

9. Because there is complete diversity between the parties in this action, this Court has jurisdiction pursuant to 28 U.S.C. § 1332. The amount in controversy exceeds the jurisdictional minimum of this Court.

10. Venue is proper in this court pursuant to 28 U.S.C. § 1391(b)(2), because the acts and omissions of Defendants complained of herein occurred in Tulare County, California.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

11. On November 15, 2021, Plaintiff Flenory timely filed a charge of discrimination with the California Civil Rights Department ("CRD"). On July 18, 2022, the CRD issued a Right-to-Sue Notice. Accordingly, Plaintiff has timely exhausted the administrative remedies. A true-and-correct copy of Plaintiff's Right-to-Sue Notice is attached to this complaint as Exhibit A.

## PARTIES

12. Plaintiff Tanya Flenory is an adult resident of the State of Colorado and, at all times mentioned in this Complaint, was an adult resident of the State of California. Plaintiff was employed by Defendants within the meaning of California Government Code § 12926(d).

13. Defendant Macy's Inc. owns and operates department stores and does business in the State of California. One of Macy's Inc.'s locations is: 2211 S. Mooney Blvd., Visalia, CA 93277. Defendant Macy's Inc. is an employer within the meaning of the FEHA, pursuant to California Government Code 12940(j)(4)(A), as it regularly employs five or more persons.

14. Defendant Macy's Retail Holdings, LLC owns and operates department stores and does business in the State of California. One of Macy's Retail Holdings, LLC's locations is: 2211 S. Mooney Blvd., Visalia, CA 93277. Defendant Macy's Retail Holdings, LLC is an employer within the meaning of the FEHA, pursuant to California Government Code 12940(j)(4)(A), as it regularly employs five or more persons.

15. Plaintiff is informed, believes, and thereon alleges that each of the Defendants herein was at all times relevant to this action the agent, employee, representative partner, and/or joint venture of the remaining Defendants and was acting within the course and scope of the relationship and jointly employed Plaintiff. Plaintiff is further informed, believes, and thereon alleges that each of the Defendants herein gave consent to, ratified, and authorized the acts alleged herein to the remaining Defendants.

## FACTUAL ALLEGATIONS

16. Plaintiff Flenory incorporates by reference the allegations set forth in the preceding paragraphs.

17. In 2014, Defendant Macy's hired Plaintiff Flenory, an African American woman, as a Sales Associate at the Fragrances counter in its store in Visalia, California. In 2016, she was promoted to Counter Manager in Fragrances.

18. Throughout her employment, Plaintiff Flenory was a dedicated employee who received accolades for her top volume in sales. She hosted numerous events at the store, including makeup events and galas, which brought in significant revenue by encouraging customers to visit the store. When new employees were hired, Plaintiff Flenory often trained them, even for positions that ranked higher than her own, including the Cosmetics Department Manager position. By any measure, she was a vital asset to the team and looked forward to advancing in the company. Both Beth Bayley, Beauty Field Director, and Ginger Burgos, then-Cosmetic Department manager, discussed Plaintiff Flenory assuming the Cosmetics Department Manager role.

19. When Plaintiff Flenory spoke with Store Manager Raul Diaz about how to achieve her goal, to her surprise, Mr. Diaz told her that she had to move out of the Cosmetics Department over to the smaller Handbags Department to serve as Sales Supervisor before being eligible to become Cosmetics Department Manager. Mr. Diaz framed it as a requisite stepping stone for her to take over in Cosmetics. For the duration of her employment at Defendant Macy's, Plaintiff Flenory never heard of an employee having to leave a department before becoming eligible to serve as Department Manager. However, she believed Mr. Diaz's assurances that moving to Handbags would enable her to become manager so she accepted the position.

20. Despite this, Plaintiff Flenory grew concerned because this was the second time that she noticed she was being treated differently than non-Black employees. The first involved her not being given an "override," which was a perk given to managers which allowed them to override the computer system so a customer could make a return, for example. Despite being a manager, Plaintiff Flenory was not given the override even though her counterpart Valerie in Women's Fragrances, who was non-Black, was. Associates asked Plaintiff Flenory why she did not have the override even though she was a manager. This was degrading for Plaintiff Flenory. Despite the setbacks, she decided to push forward and remain dedicated to growing her career.

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

21. While Plaintiff Flenory worked in the Handbags Department, Defendant Macy's hired Kristina Kendrick in 2019 to replace Mr. Diaz as Store Manager. Plaintiff Flenory explained her goal of becoming Cosmetics Department Manager to Ms. Kendrick. Quickly however, Plaintiff Flenory noticed Ms. Kendrick, who is non-Black, treating her differently than her non-Black employees. For example, to obtain promotions at Defendant Macy's, managers typically gave employees a development plan with steps about how to reach their goals and move up the ranks. Under Mr. Diaz, Plaintiff Flenory routinely met with him to discuss her development plan. However, under Ms. Kendrick, Plaintiff Flenory was never given a development plan and any coaching she previously received stopped. Instead, Ms. Kendrick coached non-Black employees like Ms. Melissa Vieira-Gutierrez with whom she developed a close rapport.

22. Plaintiff Flenory continued to ask Ms. Kendrick what she needed to do to become Cosmetics Department Manager. Ms. Kendrick told Plaintiff Flenory she was ineligible until she served as Sales Supervisor first, a position she held in Handbags, and had 15-years of experience at Defendant Macy's, a policy of which Plaintiff Flenory had never heard. Ms. Kendrick's hostility toward Plaintiff Flenory also grew. For example, when Plaintiff Flenory asked Ms. Kendrick for feedback or guidance, Ms. Kendrick replied by saying Plaintiff Flenory was "just mad" or "jealous" of others. She told Plaintiff Flenory that she didn't want to hear what Plaintiff Flenory had to say. Plaintiff Flenory believed Ms. Kendrick stereotyped her as an "angry black woman" for merely asking for guidance and accordingly withheld opportunities for training, growth, and advancement.

23. When the COVID-19 pandemic hit in 2020, Visalia store employees were put on leave. Upon their return to work in approximately June of 2020, Plaintiff Flenory's Sales Supervisor position in Handbags was eliminated and she was demoted down to Counter Manager in Fragrances. Notably, Plaintiff Flenory's position was one of just three positions eliminated in the entire store, and Defendant Macy's only restructured a scant five positions as a result of the COVID-19 pandemic, all of which affected non-white employees and, most significantly affected Plaintiff Flenory and another Black employee, the latter of whom was ultimately terminated. Further, Plaintiff Flenory lost benefits, such as extra paid time off and improved disability insurance. Her pay was reduced and she did not receive

commission *for approximately five months*, which encompassed the business months including Christmas. Meanwhile, Beverley Nunez, one of Plaintiff Flenory's non-Black associates in the Shoes department, received her commission-based pay after approximately one month upon returning from COVID-19 leave. When Plaintiff Flenory complained, she was told that *she had to ask for to have her commission-based pay reinstated,* another policy of which Plaintiff Flenory never heard.

24. Ms. Kendrick continued to be openly rude, hostile, and condescending to Plaintiff Flenory, even instructing her to "shut up" during a team meeting. Despite Ms. Kendrick's active hostility, Plaintiff Flenory ran the Fragrance Counter with great success while frequently reminding Ms. Kendrick about her hopes of advancing into the Cosmetic Department Manager position.

25. Plaintiff Flenory also experienced open hostility by non-Black coworkers. In July of 2020, Plaintiff Flenory was reprimanded by a non-Black manager, Angel Ruiz, after she followed Defendant Macy's own policy by issuing a dress code violation to an out-of-uniform associate. Other non-Black supervisors frequently issued dress-code violations to subordinates without issue. Plaintiff Flenory emailed Ms. Kendrick writing that she felt it was "because of [her] skin color" that she was reprimanded. She added "I feel I do my job well" and asked "why am I always questioned when I'm just doing my job?"

26. In August of 2020, the Cosmetics Department manager position became available and Plaintiff Flenory grew excited at the opportunity to be considered. Yet, against company policy, she was not given the chance to apply or interview for it. Instead, Ms. Kendrick handed the position to Melissa Vieira-Gutierrez, a non-Black employee who did not have any experience working in Cosmetics or Fragrances nor did she have the 15-years of experience Ms. Kendrick told Plaintiff Flenory was needed for the position. Moreover, Ms. Vieira-Gutierrez openly told employees she was not interested in the Department Manager position. Plaintiff Flenory was shocked.

27. Once Ms. Vieira-Gutierrez assumed the Department Manager role and given her lack of experience, Plaintiff Flenory was required to train Ms. Vieira-Gutierrez. Ms. Kendrick degraded Plaintiff Flenory by telling her she could "grow" by training another employee for a position she was qualified for.

28. When Ms. Vieira-Gutierrez went on leave for a scheduled eye surgery around the holiday season, Plaintiff Flenory took over the Department Manager role. Upon Ms. Vieira-Gutierrez's return, Plaintiff Flenory continued to train her. This meant that instead of being offered the same professional development opportunities as her non-Black counterparts, Plaintiff Flenory was relegated to an unpaid, unappreciated trainer role where her experience was exploited.

29. In September of 2020, Plaintiff Flenory emailed Ms. Kendrick that she was "capable of more if given the opportunity" and that she was being "held back from growth." She begged Ms. Kendrick for guidance, "I just want clarification on what am I really suppose[d] to be doing from you and not others." Ms. Kendrick dismissed her and no additional conversations were had about Plaintiff Flenory's development.

30. Instead, when Ms. Vieira-Gutierrez gave up the Cosmetics Department manager position in approximately January of 2021 a mere approximately five months after starting, Ms. Kendrick again overlooked Plaintiff Flenory and gave the position to Esmerelda Espinoza, another non-Black coworker who did not meet the minimum qualifications as stated by Ms. Kendrick and, again, *did not have any experience in the Cosmetics Department*. As before, Plaintiff Flenory was not given the opportunity to apply or interview and was again ordered to train Ms. Espinoza. Instead of granting Ms. Flenory a fair, good-faith opportunity to apply for positions, Defendant Macy's continued to employ a secretive and closed process whereby it handed coveted leadership opportunities to preselected, favored non-Black employees.

31. When Ms. Espinoza took over as Department Manager, she frequently ostracized Plaintiff Flenory from other employees by switching to speaking Spanish with other Hispanic coworkers when Plaintiff Flenory walked into the room.

32. The final straw came in the spring of 2021. Upon Plaintiff Flenory's return from family medical leave on March 3, 2021, her coworkers informed her that the Visalia store had experienced several issues with theft and, as a result, management decided to place the Cosmetic Department's stock, samples and display items in a locked cage at the rear of the store. Plaintiff Flenory needed access to the locked cage to perform her job duties, which included setting up promotional displays and

restocking products. When she asked for the combination to the lock, Ms. Espinoza refused, saying there had been a slew of thefts lately seemingly indicating Plaintiff Flenory was involved. Plaintiff Flenory responded that she was not responsible for the thefts but Ms. Espinoza refused to give her the combination. Plaintiff Flenory called and texted Ms. Kendrick to resolve the matter but was ignored. Notably, Plaintiff Flenory's non-Black subordinates had access to the locked cage, and operations manager Angel Ruiz confirmed that Plaintiff Flenory needed the combination to perform her job.

33. During Plaintiff Flenory's next shift on March 5, 2021, she immediately approached Ms. Kendrick to again request access to the locked cages in the rear of the store and complain about Ms. Espinoza's unfounded and discriminatory implications of theft. Plaintiff Flenory said she was considering quitting due to continued frustrations with management. Ms. Kendrick told her to stop complaining and that she did not want to hear "any he said/she said stuff." She told Plaintiff Flenory to "sell, sit back, and do nothing," and accused Plaintiff Flenory of being upset because "things [weren't] going her way." Plaintiff Flenory calmly tried to express her concerns while Ms. Kendrick spoke over her telling her she was "just jealous" of other employees. Left with no other option, Plaintiff Flenory placed her work phone on Ms. Kendrick's desk, said she was done, and walked out of Ms. Kendrick's office. On March 8, 2021, Plaintiff Flenory submitted a letter to management that the discrimination she continued to endure left her with no other option but to quit. Defendant Macy's never responded.

34. As a result of Defendant's conduct, Plaintiff Flenory has experienced emotional distress, including anxiety, insomnia, and depression. Plaintiff also lost wages and employment benefits, which continue to accrue due to the wrongful termination.

**FIRST CAUSE OF ACTION**
**Race Discrimination in Violation of FEHA**
**Gov. Code § 12940, *et seq.***
**(Against All Defendants)**

35. Plaintiff incorporates by reference the allegations set forth in the preceding paragraphs.

36. In relevant part, the FEHA provides that it shall be unlawful for an employer to discriminate against employees in the terms and conditions of their employment because of their race.

37. Plaintiff is an African American woman and thus a member of a protected class.

8

38.     FEHA defines "employer" broadly to encompass "any person regularly employing five or more persons, or any person acting as an agent of an employer, directly or indirectly." California Government Code § 12926(d). Defendants are employers as defined by FEHA because they regularly employed five or more persons.

39.     As set forth above, Defendants treated Plaintiff less favorably than her non-African American counterparts in the terms and conditions of their employment by knowingly permitting a harassing work environment because of her race and refusing to take immediate and appropriate corrective action to end the harassment, thereby ratifying the harassment and resulting in the constructive termination of Plaintiff's employment. Plaintiff's race was a substantial motivating reason for Defendants' discriminatory conduct.

40.     As a legal and proximate result of Defendants' conduct, Plaintiff suffered economic and non-economic damages, including but not limited to emotional distress and lost wages, all in a sum to be established according to proof at trial. Defendants' discriminatory conduct was a substantial factor in causing Plaintiff's harm.

41.     By reason of Defendants' conduct, Plaintiff has necessarily retained attorneys to prosecute the action on her behalf. Pursuant to California Government Code § 12965(b), Plaintiff is entitled to recover attorneys' fees, costs, and expert witness fees.

42.     Defendants' misconduct was committed intentionally, in a malicious, fraudulent, despicable, and oppressive manner, entitling Plaintiff to punitive damages against Defendants.

43.     By reason of the foregoing violations, Plaintiff is entitled to an injunction for current and future employees, and a public injunction, enjoining Defendants from committing further violations of the FEHA with respect to race discrimination against Black workers and failure to prevent such.

**SECOND CAUSE OF ACTION**
**Retaliation for Complaining of Discrimination and/or Harassment in Violation of FEHA**
**Gov. Code § 12940 *et seq.***
**(Against All Defendants)**

44.     Plaintiff incorporates by reference the allegations set forth in the preceding paragraphs.

45. California Government Code § 12940 requires Defendants to refrain from retaliating against any employee for making a good faith complaint of race discrimination, among other things.

46. FEHA defines "employer" broadly to encompass "any person regularly employing five or more persons, or any person acting as an agent of an employer, directly or indirectly." California Government Code § 12926(d). Defendants are employers as defined by FEHA because they regularly employed five or more persons.

47. On multiple occasions, Plaintiff complained to Defendants about the discrimination to which she was subjected. Defendants did not promptly and thoroughly investigate Plaintiff's complaints and did not take any remedial action.

48. Defendants engaged in a series of retaliatory acts that included refusing to take action to end the discrimination, demoting her, reducing her pay, failing to promote her, and constructively terminating Plaintiff's employment. Defendants' actions were substantially motivated by Plaintiff's protected activity.

49. As a legal and proximate result of Defendants' conduct, Plaintiff suffered economic and non-economic damages, including but not limited to emotional distress and lost wages, all in a sum to be established according to proof at trial. Defendants' retaliatory conduct was a substantial factor in causing Plaintiff's harm.

50. By reason of Defendants' conduct, Plaintiff has necessarily retained attorneys to prosecute the action on their behalf. Pursuant to California Government Code § 12965(b), Plaintiff is entitled to recover attorneys' fees, costs, and expert witness fees.

51. Defendants' misconduct was committed intentionally, in a malicious, fraudulent, despicable, and oppressive manner, entitling Plaintiff to punitive damages against Defendants.

52. By reason of the foregoing violations, Plaintiff is entitled to an injunction for current and future employees, and a public injunction, enjoining Defendants from committing further violations of the FEHA with respect to retaliation and failure to prevent such.

**THIRD CAUSE OF ACTION**
**Failure to Prevent Harassment, Discrimination, and Retaliation in Violation of FEHA**
**Gov. Code § 12940(k)**
**(Against All Defendants)**

53. Plaintiff incorporates by reference the allegations set forth in the preceding paragraphs.

54. California Government Code § 12940(k) provides that it shall be an unlawful employment practice for an employer to fail to take all reasonable steps necessary to prevent discrimination, harassment, and retaliation from occurring in the workplace.

55. Plaintiff is an African American woman and thus a member of a protected class.

56. FEHA defines "employer" broadly to encompass "any person regularly employing five or more persons, or any person acting as an agent of an employer, directly or indirectly." California Government Code § 12926(d). Defendants are employers as defined by FEHA because they regularly employed five or more persons.

57. Defendants subjected Plaintiff to discrimination and/or retaliation in the course of employment. Defendants failed to provide Plaintiff with protections required under California Government Code § 12940(k) by not taking immediate and sufficient action to correct the discriminatory and retaliatory conduct directed at her as an African American employee, including a failure to properly train its employees on preventing race-based discrimination and retaliation.

58. In perpetrating the above-described misconduct, Defendants engaged in pattern, practice, policy and custom of unlawful retaliation and discrimination against Plaintiff based on her race. This misconduct on the part of Defendants constitutes a policy, practice, tradition, custom and usage, which denied Plaintiff the protections of Government Code § 12940. As a result, Defendants failed to prevent retaliation, and discrimination.

59. As a legal and proximate result of Defendants' conduct, Plaintiff suffered economic and non-economic damages, including but not limited to emotional distress and lost wages, all in a sum to be established according to proof at trial. Defendants' failure to take all reasonable steps to prevent discrimination and retaliation were a substantial factor in causing Plaintiff's harm.

60. By reason of Defendants' conduct, Plaintiff has necessarily retained attorneys to

prosecute the action on her behalf. Pursuant to California Government Code § 12965(b), as a result of Defendants' conduct, Plaintiff is entitled to recover attorneys' fees, costs, and expert witness fees.

61. Defendants' misconduct was committed intentionally, in a malicious, fraudulent, despicable, and oppressive manner, entitling Plaintiff to punitive damages against Defendants.

62. By reason of the foregoing violations, Plaintiff is entitled to an injunction for current and future employees, and a public injunction, enjoining Defendants from committing further violations of the FEHA with respect to race discrimination against Black workers, retaliation, and failure to prevent such.

## FOURTH CAUSE OF ACTION
### Constructive Discharge in Violation of Public Policy
**(Against All Defendants)**

63. Plaintiff incorporates by reference the allegations set forth in the preceding paragraphs.

64. Defendants' terminated Plaintiff's employment in violation of the FEHA, as described above, and thus in in violation of the public policy of the State of California.

65. As a legal and proximate result of Defendants' conduct, Plaintiff suffered economic and non-economic damages, including but not limited to emotional distress and lost wages, all in a sum to be established according to proof at trial. Defendants' failure to take all reasonable steps to prevent harassment, discrimination, and retaliation were a substantial factor in causing Plaintiffs' harm.

66. By reason of Defendants' conduct, Plaintiff has necessarily retained attorneys to prosecute the action on her behalf. Pursuant to California Government Code § 12965(b), Plaintiff is entitled to recover attorneys' fees, costs, and expert witness fees.

67. Defendants' misconduct was committed intentionally, in a malicious, fraudulent, despicable, and oppressive manner, entitling Plaintiff to punitive damages against Defendants.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief as follows:

a. General damages according to proof, however, no less than the jurisdictional limit of this court;

12

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

b. Special damages in amounts according to proof, together with prejudgment interest;

c. Punitive damages in an amount appropriate to punish Defendants and to deter others from engaging in similar conduct;

d. Reasonable attorneys' fees and costs pursuant to Government Code § 12965(b) and any other applicable statute;

e. Interest as provided by law;

f. Penalties as provided by law;

g. Injunctive relief to require Defendants to develop and implement policies and procedures to ensure that effective remedial measures are taken when harassment is reported, and training on retaliation is administered; and

h. For such other and further relief as this Court deems equitable and appropriate.

DATED: February 27, 2023                    CALIFORNIA CIVIL RIGHTS LAW GROUP

By: *Kira Brekke*
_____
Lawrence A. Organ (SBN 175503)
Julianne Stanford (SBN 175503)
Kira Brekke (SBN 339757)
Attorneys for Plaintiff
Tanya Flenory

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury on all issues.

DATED: February 27, 2023                    CALIFORNIA CIVIL RIGHTS LAW GROUP

By: *Kira Brekke*
Lawrence A. Organ (SBN 175503)
Julianne Stanford (SBN 175503)
Kira Brekke (SBN 339757)
Attorneys for Plaintiff
Tanya Flenory